Joseph L. Sweigard v. Commissioner.
Sweigard v. Commissioner
Docket No. 971.
United States Tax Court
1944 Tax Ct. Memo LEXIS 63; 3 T.C.M. (CCH) 1138; T.C.M. (RIA) 44351; October 30, 1944
*63 George P. Orr, Esq., 2020 Packard Bldg., Philadelphia, Pa., for the petitioner. W. J. McFarland, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves deficiencies in income taxes for the years 1939 and 1940 in the amounts of $6,247.44 and $14,621.93 respectively. The sole issue is, whether during the taxable years there existed a valid partnership recognizable for income tax purposes between the petitioner and his son, William J. Sweigard. The case was submitted upon a stipulation of facts, oral testimony and exhibits. The stipulated facts are adopted as our findings of fact. Any facts found that have not been stipulated are found from the evidence. Findings of Fact Petitioner, an individual, resides with his wife at 905 S. 49th Street, Philadelphia, Pennsylvania. His income tax returns for the taxable years were filed with the collector of internal revenue for the first Pennsylvania District. The petitioner was a registered mechanical engineer and had been engaged in the contract engineering business since 1894, under the trade name of Jos. L. Sweigard & Co. He constructed many gas plants, water works systems and other *64 utility plants for both public and private corporations. A very considerable measure of financial success resulted from these operations. The petitioner was consulted as an engineer to study the problem of supplying water for G. W. Alexander & Co., Inc., manufacturers of felt hats. He became financially interested in this business and eventually acquired practically the entire ownership of its preferred and common stock. The petitioner became the president and general manager of G. W. Alexander & Co., Inc., and under his guidance the business continued to prosper and expand. The petitioner devoted the major part of his time to the business of G. W. Alexander & Co., Inc. Since 1933 that corporation has paid to the petitioner an annual salary of $25,000 as its president and manager. In 1928, the petitioner's contracting engineering business suffered reverses and the petitioner borrowed heavily from G. W. Alexander & Co., Inc. The balance of his indebtedness to that corporation on October 26, 1936 was $172,250. Since 1930, the petitioner has not engaged in contracting engineering work to any extent. An office has been maintained for reference purposes where plans of construction work *65 previously done by the petitioner were available in case of repair or an extension was desired. Furthermore, by having that office the petitioner enjoyed trade discounts on purchases he made for G. W. Alexander & Co., Inc., which were not available to the latter, but which received the benefits therefrom. The gross income of the engineering business in 1938 and up to August 1, 1939, when the partnership agreement was executed, was less than the total salaries paid. A stenographer and record keeper was the only employee. The petitioner's son, William J. Sweigard, was not an engineer. He was employed by the petitioner from 1919 to 1929, in connection with two gas companies owned or financed by the petitioner. His salary ranged from $700 in 1919 to $1,820 in 1925. Records for the years 1926 to 1929 are not available. From 1929 to 1934, William J. Sweigard was president of the Philadelphia Auburn Cord Co., which was financially backed by the petitioner. That company went bankrupt in 1934 and the petitioner wrote off as a loss the sum of $103,258.05 on account of loans he had made to it. In 1935 the son was again on the payroll of the petitioner, receiving a salary of $1,560 in that year. *66 From 1935 to 1938 the petitioner's son had a desk with a brokerage firm and earned a total gross commission of $5,800.21. On August 1, 1939, when he was 68 years of age, petitioner and his son, William J. Swelgard, entered into a written agreement to continue the business under the same trade name of Jos. L. Sweigard & Co. The said agreement, inter alia, provided: (1) Joseph L. Sweigard would assign all of the assets shown upon petitioner's books as of August 1, 1939, having a value of $261,438.28, to Jos. L. Sweigard & Co., and the latter was to assume the liabilities of the former, the existing liabilities being $65,256.54. (2) Either party with consent of the other may contribute further capital as may be reasonably necessary to the conduct of said business. (3) Each party will devote so much of his time as may be necessary and neither would engage in a competitive business. (4) Petitioner was to have a drawing account of $833.33 per month and his son a drawing account of $416.66, both sums to be considered expenses of the business for the purpose of computing profits. (5) On December 31 of each year each party was to be credited on the books with a sum equal to five *67 per cent per annum on his capital contribution, likewise to be an expense for purposes of computing profits. (6) The balance of profits was to be divided equally and all losses were to be shared equally. (7) There were to be no further withdrawals without joint consent, and neither party was to make or endorse commercial paper or become surety, guarantor or bondsman without written consent of the other. (8) The term was to be 10 years unless dissolved by death, or it could be dissolved by either on giving 30 days' notice. (9) In the event of dissolution otherwise than by death, each was entitled to his contribution with accumulated unpaid interest and so far as possible each was to receive his contributions "in kind." (10) Upon the death of either party while the agreement was in force, the survivor was to purchase the deceased party's interest. The agreement was amended on November 22, 1939 by the addition of a provision to the effect that all compensation received by either party for personal services, within or without the business, was to become the property of the partnership. The contribution by the petitioner to Jos. L. Sweigard & Co., under this agreement, was $196,181.74, *68 computed as follows: Property
Assets
Liabilities
Cash
$17,985.08
Office furniture and fixtures
301.03
15 M Bonds - Lehigh Valley Transit Co. - due 1960
7,987.50
350 Shrs. National City Bank of N. Y.
8,487.50
2 Shrs. Electric Bond & Share
35.44
60 Shrs. Texas Electric Railway
360.00
2 Shrs. North American Co.
33.83
2000 Shrs. G. W. Alexander & Co. Inc. (Par Value)
200,000.00
Investment in Winston Coal Co.
22,561.31
Investment in Winston Land Co.
3,429.65
G. W. Alexander & Co., Inc. open account
160.94
Sundry Debtors
96.00
Total
$261,438.28
Notes Payable
$63,500.00
Jos. L. Sweigard Personal a/c
1,701.14
Accounts Payable
55.40
$65,256.54
Net
$196,181.74
On September 28, 1939, the petitioner caused 2,000 shares and his son, William J. Sweigard, caused 73 shares of the capital stock of G. W. Alexander & Co., Inc., at a par value of $100 per share, registered in their respective names on the books of that corporation, to be transferred to Jos. L. Sweigard & Co. The 73 shares held by William J. Sweigard had been received by him as gifts from the petitioner on various dates between 1927 and January 3, 1939. After September 28, 1939, the dividends *69 declared and paid by G. W. Alexander & Co., Inc., on said 2,073 shares of stock were paid to and received by Jos. L. Sweigard & Co. The opening balance sheet of Jos. L. Sweigard & Co., as of August 1, 1939, shows total assets of $268,738.28, consisting of the petitioner's contribution of $261,438.28 and the contribution of the son, William J. Sweigard, of $7,300. Liabilities were shown as $65,256.54. Petitioner received dividends on the preferred and common stock of G. W. Alexander & Co., Inc., as follows: Year
Preferred
Common
1934
$24,990.00
1935
17,850.00
1936
24,990.00
$50,000
1937
3,019.63
50,000
1938
50,000
William J. Sweigard, the petitioner's son, was a director of G. W. Alexander & Co., Inc. He was never employed by or paid any salary by that corporation. William J. Sweigard was employed by the petitioner, or by concerns controlled or financed by the petitioner for the years 1919 to 1935, inclusive. The income tax returns of William J. Sweigard for the years 1919 to 1938, inclusive, except for four years the records of which are not available, show he reported remuneration for services in the total amount of $33,389.60, or a yearly average of *70 $2,086.83. The years and the amounts reported are as follows: 1919
$ 700.00
1920
1,166.75
1921
1,123.51
1922
1,300.00
1923
2,405.00
1925
3,120.00
1929
3,050.00
1930
3,025.00
1931
$2,600.00
1932
2,600.00
1933
2,600.00
1934
2,338.85
1935
2,424.68
1936
3,402.28
1937
1,005.28
1938
528.25
The income and expense statement for the five-month period ended December 31, 1939, as shown on the partnership return filed by Jos. L. Sweigard & Co., shows the following receipts and disbursements: Gross receipts
$10,520.47
Interest
375.00
Dividends
31,241.86
$42,137.33
Deductions: Salaries
$670.00
Rent
375.00
Interest
1,312.86
Taxes
18.23
Depreciation
30.10
Other deductions
1,024.46
3,430.65
Ordinary net income
$38,706.68
Net income divided as follows: Joseph L. Sweigard
$22,359.08
William J. Sweigard
16,347.60
$38,706.68
Of the amount of $10,520.47, "gross receipts from business", $10,416.76 was paid to the petitioner as "salary" by G. W. Alexander & Co., Inc., and assigned to Jos. L. Sweigard & Co. by the petitioner. Of the dividend item of $31,241.86, the sum of $31,065 represents dividends on the shares of common stock of *71 G. W. Alexander & Co., Inc. The remainder of the dividend item of $176.86 and the interest item of $375 represent income on other securities transferred by the petitioner under the aforesaid agreement. The income and expense account of Jos. L. Sweigard & Co. for the year ended 1940, as shown by the auditor's statement, is as follows: Income and Expenses Year Ended December 31, 1940 INCOME
Services, Fees, etc.
G. W. Alexander & Co.
$25,000.00
Miscellaneous
25.15
$25,025.15
Merchandising
94.53
Dividends on Investments: G. W. Alexander & Co. - 2,071 shs. $25.00
51,775.00
National City Bank - 350 shs. 1.00
350.00
North American Co. - 2 shs. 1.40
2.80
52,127.80
Interest on Bonds: Lehigh Valley Transit Bonds
727.23
Less interest accrued on B. & O. notes
180.00
547.23
Gain on sale of Lehigh Valley Transit Bonds
1,005.00
Total Income
$78,799.71
EXPENSES
Salary - Office
$ 1,300.00
Office Expenses: Rent - net
900.00
Telephone
114.81
Fees, Engineering Societies
31.00
Postage, Stationery
32.69
Bonus, Employee
25.00
Legal
713.00
Accounting
250.00
Miscellaneous
9.79
Traveling - Business
2,395.00
Insurance, Workmen's Compensation
9.09
Interest on Bank Loans
1,254.79
Taxes: Federal Old Age
36.20
Pennsylvania Unemployment
35.09
Personal Property
1.92
Philadelphia Wage
217.46
Depreciation Furniture
30.10
Total Expenses
$ 7,355.94
Income Before Partners
$71,443.77
Salaries Partners J.L.S.
9,999.96
Salaries Partners W.J.S.
4,999.95
14,999.91
Income Before Interest
$56,443.86
Interest on Capital J.L.S.
9,804.29
Interest on Capital W.J.S.
1,076.41
10,880.70
Net Income for Distribution
$45,563.16
Net Income Distribution J.L.S.
22,781.58
Net Income Distribution W.J.S.
22,781.58
$45,563.16
*72 Note: The above distribution subject to $5,000.00 cash paid each partner on Sept. 10, 1940, on account of profits earned in year 1940. A total of $10,000.00. Of the 1940 total gross income of $78,797.71, all, except the dividends on the shares of the common stock of G. W. Alexander & Co., Inc., assigned by William J. Sweigard to Jos. L. Sweigard & Co., was salary received by the petitioner or income from securities assigned by the petitioner to Jos. L. Sweigard & Co. pursuant to the August 1, 1939 agreement. The following schedule reflects the yearly amounts received by Joseph L. Sweigard and William J. Sweigard from Jos. L. Sweigard & Co. during 1939 and 1940, pursuant to the agreement of August 1, 1939. 5 months - Aug. 1 to Dec. 31, 1939
Joseph L. Sweigard
William J. Sweigard
Cash withdrawn from profits as salary
$4,166.66
$2,083.34
12 months - ended Dec. 31, 1940
Cash withdrawn from profits as salary
$9,999.96
$4,999.95
Interest on capital and profits
23,192.42
19,264.26
$33,192.38
$24,261.21
The respondent determined that the net income of the business conducted under the name of Jos. L. Sweigard & Co. for the years 1939 and 1940, except for the dividends *73 received on the 72 shares of the common stock of G. W. Alexander & Co., Inc., was includable in the gross income of the petitioner. During the taxable years 1939 and 1940, the business conducted under the name of Jos. L. Sweigard & Co. was not a bona fide partnership within the intent of the Federal income taxing statutes, but a vehicle whereby the petitioner sought to assign a part of his future income. Opinion The only issue is whether the partnership between the petitioner and his son William, entered into on August 1, 1939, constituted a valid partnership for Federal income tax purposes in the taxable years 1939 and 1940. The respondent determined that no bona fide partnership existed. He contends that all of its income for such years, except for a small amount of dividends paid on the shares of the common stock of G. W. Alexander & Co., Inc., which the son contributed to the enterprise, was the income of the petitioner and has based his deficiencies accordingly. The petitioner contends that the parties have complied with all the statutes of the State of Pennsylvania and the partnership was valid under the laws of that state. We assume that fact. It is not determinative of *74 the question before us. . The problem is factual. The agreement is not to be condemned merely because it is a family arrangement. Where, however, there is a reallocation of taxable income within the family unit, the arrangement is to be closely scrutinized to determine whether it is genuine and made in good faith. ; . When scrutinized in the light of the historical background of the parties, what was actually done during the taxable periods, the fairness of its terms, and the purposes to be served, the illegitimacy of the arrangement as a partnership under the Federal income taxing statutes is clear. The petitioner's salary from G. W. Alexander & Co., Inc., during the taxable periods, was $35,416.70. Obviously on the facts, regardless of the validity of the partnership for Federal income tax purposes, that salary was taxable to petitioner, who earned it. ; . But when considered *75 with the other facts, as it must be, in judging the validity of the partnership here for the purpose of that arrangement becomes, we think, transparent. William J. Sweigard, the son, had been less than a financial success. Under the partnership agreement of August 1, 1939, he was not required to make any contribution to the partnership capital. Later, however, he did contribute 73 shares of common stock of a par value of $100 per share of G. W. Alexander & Co., Inc. These shares the son had acquired by gift from his father, the last gift of 10 shares having been made on January 3, 1939. As against the son's contribution, having a value of $7,300, the petitioner contributed cash and securities valued at $196,181.74, or 96.41 per cent of the total capital, and the son contributed 3.59 per cent thereof. However, under the agreement, the net profits were to be divided equally. In determining the net profit the fixed salaries and a sum equal to five per cent of the contributions made by each was to be credited and deducteed as an expense. Neither party was to make further withdrawals or to make or endorse commercial paper without the consent of the other. Obviously, the purpose of this *76 provision was to protect petitioner's investments which constituted practically the entire capital of the business. Each party was required to devote only such time as the needs of the business required. Undoubtedly, the purpose of this provision was to enable the petitioner to continue devoting the major part of his efforts to the success of the hat business, from which source the principal part of the income of the partnership would flow. Another provision of the agreement permitted either party to dissolve the partnership on one month's notice when each would receive his contributed capital, so far as possible, in kind. Since the agreement was so predominately in favor of the son, the obvious purpose of this provision was to enable the petitioner to retain control and substantial ownership of his investments making up his contribution to the partnership. When the agreement was made to form the partnership, it must have been known by both parties that the contracting engineering business was without substance or prospect. Both parties must have been aware that the dividend income to the partnership from the petitioner's investment in the shares of the capital stock of G. W. Alexander *77 & Co., Inc., would not be less than $50,000, which amount petitioner had received from that corporation in each of the three years preceding the making of the partnership agreement. It must have been known to each of them also that the salary of $25,000, which the petitioner had received for the past seven years as president of G. W. Alexander & Co., Inc., would be continued. Thus, at the outset, the partnership was assured of annual receipts of $75,000 from this source alone. Of the total gross receipts of $120,936.04 received by the partnership in the taxable years, $117,936.36 was directly attributable to the salary or dividends on the stock of petitioner. Of the balance, $2,880 was dividends paid on the stock of G. W. Alexander & Co., Inc., contributed by the son, and $119.68 was from sources not specifically identified. Of the total net receipts of $110,150.45, before salaries and credits, the petitioner received 58.95 per cent on his capital contribution, amounting to 96.41 per cent of the total. The son received 41.05 per cent of the net income on his contribution of 3.59 per cent of the partnership capital. Such disparity between the relative proportions of contributions and *78 receipts on this record in itself reflects unfavorably on the bona fides of the transaction. When considered in the light of the surrounding circumstances, we conclude that the primary purpose of the challenged partnership during the taxable periods was to reallocate family income so that petitioner, the real owner thereof, could mitigate his income tax liability. That is not such a purpose as will support a partnership for Federal income tax purposes. . The fact that the son rendered service and made an insignificant contribution to the capital does not disturb that conclusion, in view of all the circumstances disclosed. For the taxable years before us, we sustain the respondent. Decision will be entered under Rule 50.